**E-FILED on:** 11/14/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KENNETH HOLCOMB, | No. C-03-02765 RMW |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS ON RECONSIDERATION |
| v. | |
| DIRECTOR OF CORRECTIONS, CAL TERHUNE, et al., | **[Re Docket No. 36]** |
| Defendants. | |

On August 29, 2006 this court granted defendants' motion for leave to file a motion for reconsideration and setting a briefing schedule with a hearing, if any, set for October 20, 2006.[1] Defendants requested that the court reconsider its March 31, 2005 Order Denying Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies. Plaintiff filed opposition and defendants filed a reply brief.[2] The court heard oral argument on October 20, 2006. The court has read the papers submitted by the parties and considered the argument of counsel. For the reasons set forth below, the court DENIES defendants' motion to dismiss on reconsideration.

---

[1] Defendants are David Clark, M.D., Cal Terhune, Anthony LaMarque, D. Holt, Jr., M. Ross, A. Alexander, K. Greeson, M.T.A. Harrison, David Thor, M.D., and Isaac Grillo, M.D.

[2] Defendants did not file a separate motion after the court granted leave to file a motion for reconsideration, but filed a reply to plaintiff's opposition.

ORDER DENYING MOTION TO DISMISS ON RECONSIDERATION—C-03-02765 RMW
SPT

# I. BACKGROUND

In late June 2000, plaintiff was attacked by other inmates at Salinas Valley State Prison ("SVSP") and knocked unconscious during the altercation. Third Amended Complaint ¶ 19. Defendants Alexander, Holt, Ross, and Greeson, correctional officers employed at SVSP, responded to the altercation and restrained the inmates involved in the altercation; Alexander handcuffed plaintiff despite his being unconscious. *Id.* ¶ 20. Holt, Alexander, and Greeson then grabbed and lifted plaintiff, trying to force him to stand. *Id.* ¶ 21. After being cautioned by inmates that lifting plaintiff may exacerbate his injuries, the three officers let plaintiff drop to the ground. *Id.* Defendant Harrison, a Medical Technical Assistant, was summoned, and plaintiff was placed on a gurney, without spinal restraints, and taken to the prison infirmary. *Id.* ¶ 23.

At the infirmary, plaintiff regained consciousness and complained of severe neck and back pain, difficulty breathing, and inability to move his body below the neck. *Id.* ¶ 24. Defendant Clark, a physician, examined plaintiff at the infirmary, concluded that plaintiff was faking his injuries, and released plaintiff for reassignment to his housing unit. *Id.* ¶ 25. Plaintiff was taken by wheelchair to his cell and dumped there without further assistance. Plaintiff, unable to move or control his bowels and bladder, laid in his own feces and urine until the following day. *Id.* ¶ 26.

The following afternoon, after repeated complaints from staff and inmates, medical staff visited plaintiff's cell. Defendant Thor, also a physician, concurred with Clark's assessment that plaintiff was faking his injuries. *Id.* ¶ 27. After additional, continued complaints from plaintiff's cellmate, plaintiff was extracted from his cell and taken to the prison health services corridor. There plaintiff was examined by defendant Grillo, another physician. Grillo also determined that plaintiff was faking his injuries. *Id.* ¶¶ 28-30. After plaintiff's repeated pleas, he was transported to Salinas Valley Memorial Hospital on June 28, 2000. *Id.* ¶ 31; Schmidt Decl., Ex. 23. There, plaintiff was diagnosed as having sustained C4-5 quadriplegia due to a fracture dislocation. Plaintiff underwent surgery and remained at the hospital until July 14, 2000. Complaint ¶ 32. On July 14, 2000 plaintiff was transferred to Kentfield Memorial Hospital ("Kentfield"), where he remained until April 27, 2001. Schmidt Decl., Ex. 23. On that date, plaintiff was transferred to the Acute Care Hospital at the California State Hospital in Corcoran where he presently resides. *Id.*

1   On October 25, 2000 a State Board of Control claim for damages arising from the above-described incident was executed on behalf of plaintiff. An attorney from Prison Law Office acting on behalf of plaintiff prepared a State of California Board of Control Government Claim form on December 18, 2000. *See* Defs.'s Request for Judicial Notice, Ex. A.

On July 20, 2001 plaintiff filed a suit in federal court. After the state defendants moved to dismiss, the parties stipulated to plaintiff's filing of an amended complaint. An amended complaint was filed and on June 21, 2002 the court dismissed plaintiff's claims with leave to amend for failure to exhaust. On July 22, 2002 plaintiff filed a second amended complaint. Defendants again moved to dismiss for failure to exhaust administrative remedies. Plaintiff responded that no administrative remedies were available because defendants were obstructing his ability to file an administrative claim with the CDC. On October 28, 2002, the court granted plaintiff an additional thirty days within which to exhaust his administrative claims with the CDC and to file a third amended complaint.

On October 4, 2002, plaintiff's counsel, William Schmidt, met with plaintiff and personally completed two 602 appeals forms with plaintiff's signature. One was apparently labeled "emergency." Schmidt's request to make a copy of the form was denied. Schmidt asked if he could deliver the forms to one of the appeals coordinators on staff, but was told that none were available. After asking to see a warden or deputy warden, Schmidt was told that they, too, were not available. Schmidt was then directed to place the forms in an "in box." Schmidt secured a receipt from one of the officers on duty documenting his submission of the forms. Schmidt Decl. ¶¶ 14-16. Schmidt then contacted the Corcoran prison multiple times after October 22, 2002 to follow-up about the appeals. There was no record of the appeals having been filed, and prison staff was unable to locate the appeals forms. *Id.* ¶ 17.

On November 1, 2002, Schmidt again traveled to the Corcoran prison to meet with plaintiff. When Schmidt arrived, plaintiff informed him that the two forms filed on October 4 were returned to him on October 30 and had been screened out because they needed to be forwarded to SVSP directly. *Id.* ¶¶ 18-19. The screening form was dated and stamped October 9, 2002. *Id.*, Ex. 12. Schmidt and plaintiff then completed two additional 602 appeal forms, again marking one

ORDER DENYING MOTION TO DISMISS ON RECONSIDERATION—C-03-02765 RMW
SPT                                                     3

"emergency." With the assistance of the litigation coordinator at Corcoran, the forms were sent by fax and overnight mail to the SVSP Appeals Office. *Id.* ¶ 21. In a letter accompanying the appeals, Schmidt requested that the appeals be immediately forwarded to each subsequent level of review. *Id.*, Ex. 14. Schmidt contacted the litigation coordinator at SVSP on November 5 and November 6, and was told that the appeals had been returned to plaintiff via mail. As plaintiff had received no response by November 18, 2002, Schmidt contacted both the litigation coordinator and warden at Corcoran regarding the appeals. On November 25, 2002, the litigation coordinator responded with a letter indicating that no decision regarding the appeals had been received at Corcoran from SVSP as of November 21. *Id.* ¶¶ 21-22.

Ultimately, on November 27, 2002, Schmidt received a facsimile from the litigation coordinator at SVSP attaching memorandum describing the action taken on plaintiff's appeals. *Id.* ¶ 23, Ex. 21. Plaintiff's appeals had been screened out as untimely. *Id.*, Ex. 22. A box on the appeals screening form was marked with an "X" next to the following statement: "The appeal exceeds 15 working days time limit, and the inmate has failed too [sic] offer a credible explanation as to why he could/did not submit appeal within the time limit, CCR 3084.2(c), 3084.3(c)(6), & 3084.5(c) (eff. Nov. 96)." *Id.* A comment field on the form includes the handwritten comment "+ 2 yrs. after event." *Id.* The bottom of the form reads "This screening action may not be appealed unless you allege the above reason is inaccurate. In such a case please return this form to the Appeals Coordinator with the necessary information." *Id.* Plaintiff took no further action with respect to this appeal. Plaintiff's counsel states that during a conversation with the SVSP appeals coordinator on January 14, 2003,[3] the appeals coordinator confirmed that the screening action was not appealable to a higher level. *Id.* ¶ 25.

Additional facts and procedural background of this action are set forth in the court's prior orders issued February 18, 2003 (in related case number C-01-20685 RMW) (the "Feb. 18 Order") and March 31, 2005 (the "Mar. 31 Order").

---

[3] By the time of this conversation, plaintiff had already filed his third amended complaint and his opposition to the present motion was due in three days.

ORDER DENYING MOTION TO DISMISS ON RECONSIDERATION—C-03-02765 RMW
SPT                                            4

## II.  ANALYSIS

Defendants initially moved to dismiss the present action arguing that plaintiff failed to exhaust all administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Defendants argued that because plaintiff's administrative appeal was rejected as untimely, it is procedurally defaulted and incapable of exhaustion.  *See* Mar. 31 Order at 1:28-2:3.  Plaintiff countered that all administrative remedies that were available to him had been exhausted.  Relying upon *Ngo v. Woodford*, 403 F.3d 620 (9th Cir. 2005) ("*Ngo*"), the court denied defendants' motion to dismiss.  Defendants now move for reconsideration based on the Supreme Court's recent holding in *Woodford v. Ngo*, 126 S. Ct. 2378 (June 22, 2006) ("*Woodford*") reversing the Ninth Circuit's holding in *Ngo* and remanding the case for further proceedings.

### A.     Exhaustion of Administrative Remedies Under § 1997e(a)

Defendants argue that under *Woodford* plaintiff has not exhausted his administrative remedies because, essentially, "if an appeal is presented and ultimately not accepted because it is . . . not taken within the time period stated by the state system, the claim is a procedurally defective claim" incapable of exhaustion.  *See* Defs.'s Reply at 8:20-22.  Plaintiff does not disagree that *Woodford* requires proper exhaustion of remedies.  Rather, plaintiff argues that *Woodford* does not stand for the proposition "that all prisoners who untimely file *for any reason* are forever denied access to federal court."  Opp. at 1:11-12 (emphasis in original).  In support, plaintiff relies upon the Court's reasoning and concerns in *Woodford* and on the specific framework of the grievance system in California.  Plaintiff's arguments appear persuasive in light of the reasoning and policy concerns set forth in the *Woodford* opinion.

The Court in *Woodford* observed that the exhaustion of administrative remedies requirement serves two main purposes—it protects administrative agency authority and it promotes efficiency since claims can generally be resolved more quickly and economically in proceedings before an agency than through litigation.  *Id.* at 2385.  The Court explained that "the benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance":

> For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the

> prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 2388. The Court stated, "[E]xhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and discourages 'disregard of [the agency's] procedures.'" *Id.* at 2385 (citation omitted).[4] Thus, the Court made clear its concern that permitting grievances filed late without any reason would render the PLRA exhaustion requirements toothless and allow prisoners to bypass the administrative remedies scheme at will. Where a plaintiff has good reason for the delay or does not have the opportunity to file a timely claim, the Court's concerns do not appear to be implicated; that is, the prisoner is not willfully bypassing the available administrative remedies, but rather is precluded by events outside his control from availing himself of the administrative remedies. Indeed, the Court observed that the exhaustion requirements are designed to deal with parties who *do not want* to voluntarily exhaust:

> Because of the advantages of administrative review, some aggrieved parties will voluntarily exhaust all avenues of administrative review before resorting to federal court, and for these parties an exhaustion requirement is obviously unnecessary.
>
> \*\*\*
>
> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.

*Id.* (citation omitted).

Here, defendants propose a stringent reading of *Woodford* that any procedural defect in an appeal, such as untimeliness, results in improper exhaustion. This does not seem to comport with the Court's reasoning and concern, as discussed above. While an absolute bar for grievances filed late without reason (such as the grievance at issue in *Woodford*) would further the policies of

---

[4] The court's Feb. 18 Order had observed these same policy considerations, noting that Congress's objective behind the PLRA is to reduce quantity and improve quality of prisoner suits and Congress sought to afford correctional officials time and opportunity to address complaints internally before allowing a prisoner to initiate a federal lawsuit. In some instances the internal review may lead to corrective action and in others, the review may filter out frivolous claims. Further, for cases ultimately filed in court, adjudication could be facilitated by an administrative record that clarifies the controversy. *See* Feb. 18 Order at 7 n.9 (citing *Porter v. Nustle*, 122 S. Ct. 983, 988 (2002)).

ORDER DENYING MOTION TO DISMISS ON RECONSIDERATION—C-03-02765 RMW
SPT                                    6

1  promoting voluntary exhaustion, an absolute bar for a grievance that is untimely, but with good
2  reason, would seem at odds with the very purposes set forth by the Court in *Woodford*.

3         First, as plaintiff argues, the administrative remedies framework under California law and the
4  DOC's own operations manual both provide mechanisms for permitting grievances that exceed the
5  prescribed time limits. Under California Code of Regulations § 3084.3(c)(6), an inmates' appeal
6  may be rejected as untimely if it is filed after the prescribed times *and* the appellant had the
7  opportunity to file within such time constraints. Therefore, the regulations distinguish those
8  situations where the inmate, for some reason, did not have the opportunity to file the grievance
9  within the specified times. Under Article 53 of the CDC's Operations Manual, the acceptance of an
10 appeal after the 15-day policy is within the discretion of the appeals coordinator. Jennifer Marquez
11 Decl. Supp. Defs.'s Reply ("Marquez Decl."), Ex. A at 1. This suggests that the appeals coordinator
12 may have occasion to find that an appeal, filed untimely, nevertheless should be brought before the
13 grievance system. Although the CDC's Operations Manual permits lapse of time to be grounds for
14 rejection of an appeal, it places an obligation upon the appeals coordinator to consider whether the
15 inmate had the opportunity to file in a timely manner:

> A decision may be made to refuse acceptance of any given appeal for the following specific reasons:
>
> \*\*\*
>
> There has been too great a time lapse between when the action or decision occurred and when the appeal was submitted. The appeals coordinator shall be guided by DOM 54100.5 and, in addition, ensure that the inmate or parolee had, in fact, the opportunity to file in a timely manner.

21 Marquez Decl., Ex. A at 2 (§ 54100.8.1).

22        Because of these express mechanisms within the administrative remedies framework,
23 defendants' proposition that *Woodford* would bar all untimely appeals as improperly exhausted
24 appears to go too far. In particular, such a rule would mean that an inmate whose untimely
25 grievance was rejected cannot seek relief from the federal courts even where there was an abuse of
26 discretion in rejecting the grievance for untimeliness or where the inmate had no opportunity to
27 timely file. The court does not read *Woodford* to so wholly insulate the grievance system from
28 judicial review in all cases of untimely appeals. Indeed, the Court observed in *dicta* that it had no

ORDER DENYING MOTION TO DISMISS ON RECONSIDERATION—C-03-02765 RMW
SPT        7

occasion to consider situations where the prison administrators purposely apply procedural requirements to defeat meritorious claims (or otherwise bar meaningful opportunity for prisoners to raise meritorious grievances):

> Respondent contends that requiring proper exhaustion will lead prison administrators to devise procedural requirements that are designed to trap unwary prisoners and thus to defeat their claims. Respondent does not contend, however, that anything like this occurred in his case, and it is speculative that this will occur in the future. Corrections officials concerned about maintaining order in their institutions have a reason for creating and retaining grievance systems that provide–and that are perceived by prisoners as providing–a meaningful opportunity for prisoners to raise meritorious grievances. And with respect to the possibility that prisons might create procedural requirements for the purpose of tripping up all but the most skillful prisoners, while Congress repealed the "plain, speedy, and effective" standard, see 42 U.S.C. § 1997e(a)(1) (1994 ed.) (repealed 1996), we have no occasion here to decide how such situations might be addressed.

*Id.* at 2392-93.

Second, as plaintiff argues, the Court in *Woodford* had no occasion to evaluate the rejection of an appeal for untimeliness where the appellant did *not* have opportunity to file within the prescribed limits. In *Woodford*, the Court recognized that in California, an inmate's appeal may be rejected if the "[t]ime limits for submitting the appeal are exceeded *and the appellant had the opportunity to file within the prescribed time constraints*." *Id.* at 2383 (citing Cal. Code Regs. § 3084.3(c)(6)) (emphasis added). There, the respondent was placed in administrative segregation for two months for allegedly engaging in inappropriate activity in the prison chapel. 126 S. Ct. at 2383. He claimed that after he was released from segregation he was barred from participation in certain religious activities. *Id.* Approximately six months later, he filed a grievance challenging the restrictions. *Id.* at 2383-84. However, the inmate appeal was untimely without reason. The grievance was rejected as untimely because it was not filed within the requisite fifteen working days from the challenged action. *Id.* at 2384. The Court held that exhaustion of the administrative remedies must be "proper." In doing so, however, the Court did not purport to set forth what constitutes "proper" exhaustion. Rather, in holding that proper exhaustion was necessary, the Supreme Court appeared to primarily be rejecting Ngo's argument that § 1997e(a) represented nothing more than what Ngo termed "exhaustion *simpliciter*." *Id.*; *see, e.g., id.* at 2387 ("Construing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage."); *id.* at 2389

ORDER DENYING MOTION TO DISMISS ON RECONSIDERATION—C-03-02765 RMW
SPT                                               8

1  ("As interpreted by respondent, § 1997e(a) would permit a prisoner to bypass deliberately and
2  flagrantly administrative review without any risk of sanction."). Here, plaintiff has been rendered a
3  permanent quadriplegic from injuries sustained in the incidents that are the subject of his
4  administrative appeal whereas the grievance in *Woodford* did not involve physical injuries. What
5  circumstances, if any, warrant an exception because plaintiff did not have "opportunity to file within
6  the prescribed time constraints" is not addressed by *Woodford*.

7  In *Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003), the Fifth Circuit recognized that
8  certain circumstances may warrant an exception. There, an inmate filed his initial grievance late
9  because the injuries to his hand giving rise to his grievance prevented him from completing the
10 forms within the prescribed time. His appeals were rejected as untimely at all levels. The Fifth
11 Circuit observed that an inmate may be excused for untimeliness where a medical condition prevents
12 him from physically being able to pursue his administrative remedies. The court held that
13 "administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance
14 is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt
15 to exhaust his remedies based on the untimely filing of the grievance." *Id.* at 868.

16 Thus, even in light of *Woodford*, plaintiff here has exhausted his administrative remedies
17 because, although his appeal was untimely, the delay was excusable and caused by physical injuries
18 and circumstances outside of plaintiff's control. In their reply brief, defendants agree that plaintiff's
19 explanations of untimeliness suffices to explain why he did not file within the fifteen day time limit,
20 but does not suffice to explain the more than two years lapse.[5] However, there is no dispute that
21 plaintiff sustained serious physical injuries. Due to his injuries, he was removed from SVSP in June
22 2000 and transported directly to a hospital where he was diagnosed with permanent quadriplegia.

---

[5] This appears inconsistent with the rejection of plaintiff's appeal as untimely. As alleged, the appeals screening form was marked with an "X" next to a box stating: "The appeal exceeds 15 working days time limit, and the inmate has failed too [sic] offer a credible explanation as to why he could/did not submit appeal within the time limit, CCR 3084.2(c), 3084.3(c)(6), & 3084.5(c) (eff. Nov. 96)." Third Amended Complaint ("TAC") ¶ 23, Ex. 22. A comment field on the form has the handwritten comment "+2 yrs. after event." *Id.* The bottom of the form reads "This screening action may not be appealed unless you allege the above reason is inaccurate." *Id.* Plaintiff argues that because the injuries underlying his grievance rendered him a permanent quadriplegic "in critical condition and undergoing acute care" during the fifteen days filing period and because of the extent of his injuries he was also incapable of filling out and submitting grievance forms without assistance, rejection of his first level appeal was not proper.

ORDER DENYING MOTION TO DISMISS ON RECONSIDERATION—C-03-02765 RMW
SPT                                         9

He was never returned to SVSP. He underwent surgery and was kept in hospitals until April 2001 at which point he was moved to an acute care facility. As a result of his injuries he is a permanent quadriplegic and has thereafter remained a resident of the acute care facility. Although an attorney from Prison Law Office apparently prepared a State Board of Control claim form on behalf of plaintiff in October 2000, this fact alone does not necessarily mean plaintiff had the opportunity to file an appeal at SVSP. Plaintiff was not located at SVSP and probably did not even know the State Board claim was filed by an attorney voluntarily trying to protect plaintiff. Plaintiff contends that he submitted second and third level grievances along with an explanation of the untimeliness.[6] Plaintiff argues that these were rejected without consideration of the merits on the grounds that the initial appeal had been rejected as untimely. If plaintiff's contentions are true, there does not appear to have been any meaningful consideration of plaintiff's explanation of the delay in appealing. Defendants dispute that no explanation was attached to plaintiff's second and third level appeals. However, as noted above, the CDC Operations Manual provides that the appeals coordinator shall ensure that the inmate had, in fact, the opportunity to file in a timely manner when rejecting an untimely appeal on the basis that too much time has elapsed since the action. According to plaintiff's allegations, this does not appear to have occurred.

The court concludes that based upon the facts as they now appear, plaintiff must be deemed to have exhausted his administrative remedies. Accordingly, defendants' motion to dismiss is denied on reconsideration.

DATED: 11/3/06

RONALD M. WHYTE
United States District Judge

---

[6] According to the California Department of Corrections Manual, "[t]he acceptance of an appeal request beyond the 15-day policy is at the discretion of the appeals coordinator." § 54100.4. Plaintiff initially filed an action in federal court after his first level grievance was rejected as untimely. In its February 18, 2003 order, this court indicated that plaintiff could proceed with his second level appeal and provide an explanation for the untimeliness of the first level filing and that the appeals coordinator could exercise its discretion whether to accept the appeal. Feb. 18 Order at 10. The court observed "Under the circumstances of this case, any contention of the part of the CDC that plaintiff should have filed his administrative appeal within fifteen days of the events is patently unreasonable." Feb. 18 Order at 9.

ORDER DENYING MOTION TO DISMISS ON RECONSIDERATION—C-03-02765 RMW
SPT                                                           10

**Notice of this document has been mailed or electronically sent to:**

**Counsel for Plaintiff:**

William L. Schmidt     bschmidt@ncinternet.net

**Counsel for State Defendants:**

Tom Blake              tom.blake@doj.ca.gov

**Counsel for Defendant Clark:**

Van Longyear           longyear@lolllp.com
James M. Davis         mdavis@lolllp.com

**Counsel for Defendant Grillo:**

Maureen H. Loftis      mloftis@glattys.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     11/14/06                              SPT
                                            **Chambers of Judge Whyte**